IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACK MILLER, et al.,               :
individually and on behalf of
all others similarly situated      :

       v.                          :    Civil Action No. DKC 26-989

                                   :

DISTRICT OF COLUMBIA WATER AND
SEWER AUTHORITY d/b/a DC Water     :

**MEMORANDUM OPINION**

This is a putative class action initially brought by Dr. Nicholas Lailas against D.C. Water and Sewer Authority ("DC Water" or "Defendant"), asserting negligence, nuisance, and trespass claims arising out of a large sewage spill in the Potomac River earlier this year. Four additional plaintiffs were added later, Jack Miller, KJ's Outdoor Adventures, LLC, Arian Hosseini, and Prince William Marina, Inc. (collectively, "Plaintiffs"). Presently pending and ready for resolution is the motion for leave to file a second amended complaint filed by Plaintiffs. (ECF No. 23). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

## I.   Background

### A.   Factual Background[1]

DC Water "is 'a corporate body' with 'a separate legal existence within the District [of Columbia] government.'" (ECF No. 22 ¶ 19 (quoting D.C. Code § 34-2202.02(a))). Its purpose includes overseeing and operating "water distribution and sewage collection, treatment, and disposal systems and services." (*Id.* (quoting D.C. Code § 34-2202.02(c))). One major sanitary sewer line that DC Water operates is known as the Potomac Interceptor ("PI"). (*Id.* ¶ 1). "The PI serves as a regional sanitary sewer system that transports approximately 60 million gallons of wastewater per day from service areas in Fairfax County and Loudoun County, Virginia through Montgomery County, Maryland, to DC Water's Blue Plains Advanced Wastewater Treatment Plant in Washington, D.C." (*Id.* ¶ 4).

On January 19, 2026, a section of the PI collapsed near the intersection of Clara Barton Parkway and I-495 in Montgomery County, Maryland. (*Id.* ¶ 5). In total, roughly 243 million gallons of untreated wastewater flowed into the Potomac River in

---

[1] A detailed account of the factual allegations in the operative first amended complaint ("FAC") is unnecessary to resolve the pending motion. What follows is an abridged version of the relevant facts as alleged in the FAC.

the ensuing days.  (*Id.* ¶¶ 1-2).  After the PI collapse, multiple entities reported *E. coli* concentrations in the Potomac River nearly 10,000 times the "threshold used by Virginia, Maryland, and District of Columbia agencies." (*See id.* ¶ 9).  Plaintiffs allege that DC Water knew prior to the collapse, and as early as 2011, that the PI had degraded and needed repairs, yet DC Water failed to repair the section that ultimately collapsed.  (*Id.* ¶¶ 6-7). They thus contend that "DC Water was negligent" in continuing to operate "unrepaired segments within a known high-risk corridor" without "implement[ing] reasonable interim operational safeguards to manage the foreseeable risk of failure." (*Id.* ¶ 8).

Plaintiffs, three individuals and two businesses, allege various harms they have suffered because of the collapse.  Dr. Lailas is a Virginia resident who "owns an approximately 45-foot vessel moored at Columbia Island Marina, and he is a member of the Old Dominion Boat Club."  (*Id.* ¶ 18).  He alleges that the contamination of the Potomac River has rendered him unable to use his vessel and "his paid marina and boat club memberships effectively valueless." (*Id.*).  Similarly, Arian Hosseini is a Virginia resident who also keeps his boat at Columbia Island Marina and has been unable to use his boat on the Potomac River.  (*Id.* ¶ 17).  Jack Miller is a Maryland resident who lives approximately

200 yards from the Potomac River and who has allegedly suffered noxious odors, air and water quality concerns, and prolonged displacement from his home.  (*Id.* ¶ 14).  As for the businesses, KJ's Outdoor Adventures, LLC is a Virginia business that offers "guided fishing and recreational trips on the Potomac River," and that "has experienced significant booking declines and client cancellations" since the collapse.  (*Id.* ¶ 15).  Prince William Marina, Inc. is a Virginia company ostensibly operating a marina on the Potomac River that "has experienced customer cancellations, reduced slip occupancy, and diminished revenue" since the collapse.  (*Id.* ¶ 16).

## B.   Procedural Background

On February 20, 2026, Dr. Lailas sent a formal notice of intent to file a citizen suit under the Clean Water Act ("CWA") to DC Water, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region 3, the Secretary of the Maryland Department of the Environment, and the Director of the D.C. Department of Energy and Environment.  (*Id.* ¶ 117).  Under the CWA, Dr. Lailas could not file a citizen suit within sixty days of giving notice of the alleged violation, nor can he file such a suit if the EPA Administrator or relevant state

4

entity "has commenced and is diligently prosecuting a civil or criminal action."  33 U.S.C. § 1365(b)(1).

On March 6, Dr. Lailas filed a class action complaint in this court against DC Water, asserting claims of negligence, private nuisance, public nuisance, and trespass.  He also purported to reserve the right to bring federal claims in the future under the CWA and the Resource Conservation and Recovery Act ("RCRA").  (ECF No. 1).  DC Water moved to dismiss on March 31.  (ECF No. 17).  The parties then agreed to a schedule permitting Dr. Lailas to file a first amended complaint ("FAC") as of right on April 14.  (ECF No. 18, at 2).  They also agreed that Dr. Lailas could file a second amended complaint ("SAC") adding a CWA claim by May 6, at which point the statutory sixty-day notice period would have elapsed, provided that "such a claim ha[d] not been cut off by a diligent prosecution by a federal or state regulatory agency."  (*Id.*).

On April 14, Dr. Lailas filed the FAC, (ECF No. 20), which he then corrected on April 17 to satisfy the page limit prescribed in the Local Rules, (ECF No. 22).  In the FAC, Dr. Lailas added the four plaintiffs described above: Arian Hosseini, Jack Miller, KJ's Outdoor Adventures, LLC, and Prince William Marina, Inc.  (*Id.* ¶¶

14-17).[2]   In addition to revising the factual allegations substantially, Plaintiffs also split the trespass claim in the FAC into two counts, one for trespass to land and the other for trespass to chattels.

On April 20, the United States commenced a civil action against the District of Columbia and DC Water in the United States District Court for the District of Columbia, asserting various violations of the CWA related to the January 2026 sewage spill in the Potomac River.  (ECF No. 23-5).  That same day, the Maryland Department of the Environment sued DC Water in the Circuit Court for Montgomery County, Maryland, alleging violations of Maryland environmental law, negligence, and public nuisance in relation to the same sewage spill.  (ECF No. 23-6).

On May 6, Plaintiffs moved for leave to file a second amended complaint.  (ECF No. 23).  Although Defendant had consented to a SAC that added a CWA claim, Plaintiffs acknowledge that their right

---

[2] The FAC added the names of the new plaintiffs before that of Dr. Lailas, and the parties began captioning their papers with Jack Miller as the lead plaintiff.  When the names were added to the docket, however, they appear after the original plaintiff and the CM/ECF system continues to identify this case with his name first.  In order to conform the docket to the parties' format, the clerk will be directed to edit the docket to place the named plaintiffs in the order in which they appear in the SAC, once filed.

to add such a claim at present was cut off at least by the federal government action underway.  (ECF Nos. 23-1, at 2; 30, at 6 n.2). Instead, Plaintiffs propose several other amendments.  (ECF No. 23-1, at 1-2).  Defendant responded on May 19, (ECF No. 24), and Plaintiffs replied on June 2, (ECF No. 30).

## II.  Standard of Review

Fed.R.Civ.P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  Accordingly, the United States Court of Appeals for the Fourth Circuit has instructed that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the party of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Defendant only meaningfully contests Plaintiffs' proposed amendments on futility grounds.[3]  "A proposed amendment

---

[3] Defendant "questions whether there is a good faith basis to expand the class area" and add L.J.K. Outdoors as a plaintiff. (ECF No. 24, at 9).  Insofar as this statement raises a bad faith argument against granting leave to amend, it fails.  As Defendant recognizes, an amended complaint is in bad faith when "it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal."  *Carter v. SNC-Lavalin Constructors, Inc.*, No. 17-cv-3198-DKC, 2019 WL 918382, at *3 (D.Md. Feb. 25,

is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson*, 785 F.2d at 510). In *Save Our Sound*, the Fourth Circuit further explained that "[a] proposed amendment is also futile if the claim it presents would not survive a motion to dismiss."  *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

## III. Analysis

Plaintiffs seek to make the following amendments in the SAC: (1) incorporate newly available information sourced from the lawsuits that the United States and the Maryland Department of the Environment have filed; (2) add a new plaintiff, L.J.K. Outdoors; and (3) revise the class definition to expand its geographic scope. (ECF No. 23-1, at 1-2).  Defendant does not object to the first amendment, (ECF No. 24, at 9), but does to the second and third. It also objects to Plaintiffs' continued inclusion of a reservation

---

2019) (alteration in original) (quoting *Minter v. Prime Equip.*, 451 F.3d 1196, 1206 (10th Cir. 2006)).  Plaintiffs' desire to expand the geographic scope of their class indicates none of the above. Although Plaintiffs knew the extent of the advisories before filing the FAC, (ECF No. 22, at 23 & n.16), and therefore could have alleged then the geographic parameters they propose now, their perhaps belated conformity of the class geography to the limits of the advisories does not reflect an effort to evade dismissal. There is no pending motion to dismiss that Plaintiffs' amendment would moot.  Amendment will not be denied for bad faith.

of right to assert a CWA claim in the future.  Because amendment would not be futile as to the new plaintiff and revised class definition, Plaintiffs' motion for leave to amend will be granted. Defendant is correct that Plaintiffs' reservation of right is inoperative, and it will therefore be stricken.

### A.    New Plaintiff

Plaintiffs seek to add an additional plaintiff, L.J.K. Outdoors, LLC, which is a North Carolina company registered to do business in Maryland.  (ECF Nos. 23-1, at 6; 23-3 ¶ 20).  L.J.K. Outdoors "conducts a fishing charter business on the Potomac River from Goose Bay Marina and Campground in Maryland."  (ECF No. 23-3 ¶ 20).  Prior to January 19, 2026, L.J.K. Outdoors saw "steady year-over-year growth in its charter business." (*Id.*).  Since the PI collapse, however, "L.J.K. Outdoors's 2026 season revenue is down approximately 47%—a loss of approximately $15,000 as of mid-April—compared to the same period in 2025."  (*Id.*).  Moreover, "[m]ultiple customers have informed L.J.K. Outdoors that they will not book charters on the Potomac this spring because of the sewage discharge."  (*Id.*).  Defendant argues that L.J.K. Outdoors "does not allege any actual harm caused by the Potomac Interceptor collapse" because it does not allege that any of the customers who had indicated they would not book charters this spring otherwise

9

had concrete intentions to book such charters with L.J.K. Outdoors. (ECF No. 24, at 8).  Defendant further argues that even if those customers had such concrete intentions, L.J.K. Outdoors has not alleged that it "was unable to refill those bookings with other customers."  (*Id.*).

"[A] district court may . . . deny leave to amend as futile where the proposed amended complaint fails for lack of standing." *Evans v. Am. Collection Enter.*, 624 F.Supp.3d 593, 598 (D.Md. 2022) (citing *Laufer v. Naranda Hotels, LLC*, No. 20-cv-1974-SAG, 2020 WL 7384726, at *3 (D.Md. Dec. 16, 2020); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 484 (4th Cir. 2015)).  It is not immediately clear whether Defendant's objection is that L.J.K. Outdoors lacks Article III standing, or that L.J.K. Outdoors fails to satisfy the injury and causation elements of its asserted negligence or public nuisance claims.  Because Defendant makes no mention of the specific tort claims L.J.K. Outdoors intends to assert, however, its attack appears to be on Article III standing grounds.[4]  The standing requirement consists of three

---

[4] There are some additional clues that Defendant's argument sounds in Article III standing.  First, it characterizes the harm required to be alleged as "actual" and "concrete," (ECF No. 24, at 8, 9), terms of art in Article III standing doctrine.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified).  Second, Defendant made a similar argument against Dr. Lailas in

elements: "(1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." *Straubmuller v. Jetblue Airways Corp.*, No. 23-cv-384-DKC, 2023 WL 5671615, at *2 (D.Md. Sep. 1, 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)).  Defendant's challenge is thus to the injury-in-fact and causation elements.

L.J.K. Outdoors alleges an actual injury and causation under the liberal futility standard.  "[F]inancial harm is a classic and paradigmatic form of injury in fact," *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 210 (4th Cir. 2020) (alteration in original) (quoting *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018)), and it includes "lost business opportunities," *id.* at 211 (citing *Craig v. Boren*, 429 U.S. 190, 194 (1976)).  In *Maryland Shall Issue*, the Fourth Circuit determined that a firearm dealer's lost revenue constituted an injury in fact.  *Id.* at 211–12. Likewise, L.J.K. Outdoors alleges that it experienced a 47% decline in revenue as of mid-April 2026.  (ECF No. 23-3 ¶ 20).  As for causation, the Fourth Circuit further held in *Maryland Shall Issue*

---

its first motion to dismiss and characterized it as a standing argument.  (ECF No. 17-1, at 11–14).

that the dealer satisfied the causation element because sales suffered *after* the enactment of the challenged handgun licensing law, and after the enactment it lost customers who otherwise expressed an intent to purchase firearms from the dealer.  *See id.* at 213.  Similarly, L.J.K. Outdoors's lost revenue in 2026 occurred *after* the January 19, 2026, PI collapse, and after the collapse it lost customers who stated they would "not book charters on the Potomac this spring *because of the sewage discharge*."  (ECF No. 23-3 ¶ 20 (emphasis added)).  Contrary to Defendant's contention, the proposed allegations identifying causal language in customers' communications *do* suggest that customers expressed their intention otherwise to book charters with L.J.K. Outdoors.  Under the liberal futility standard, L.J.K. Outdoors alleges enough to satisfy the two standing elements that Defendant challenges.

Whether L.J.K. Outdoors was able to fill those lost bookings with other customers concerns "the *extent* of the economic injury as opposed to the *existence* of one," and thus should not factor into the standing analysis.  *See id.* at 210; *see also id.* at 212 (explaining that it is sufficient for purposes of standing that a business has "suffered an injury through the constriction of its pool of potential customers" (citation modified)).  In any event, coupling the customers' communications with the concomitant

12

decline in revenue raises the reasonable inference that L.J.K. Outdoors was not successful in filling those lost bookings.

Plaintiffs will be permitted to add L.J.K. Outdoors as a plaintiff.

### B.   Expanded Scope of Class Geography

Plaintiffs also seek to expand the geographic scope of the class in the SAC.  In the FAC, the class was limited to persons located within thirty miles of the PI collapse, (ECF No. 22 ¶ 69); Plaintiffs now wish to expand this range to the area extending from Offutt Island to the Governor Harry W. Nice Memorial Bridge ("Nice Bridge"), (ECF No. 23-4 ¶ 73).

Defendant argues that expanding the class would be futile because Plaintiffs assert no facts that "allege any impact from the Potomac Interceptor as far down as" the Nice Bridge.  (ECF No. 24, at 8).  This argument is unpersuasive at this stage.  As Defendant itself concedes, the Virginia Department of Health issued an advisory directing people to avoid contact with water extending as far south as the Nice Bridge.  (ECF Nos. 23-4 ¶ 68; 24, at 8).  Maryland similarly issued preliminary closures for shellfish north of the Nice Bridge.  (ECF Nos. 23-4 ¶ 68; 24, at 4).  At the very least, these warnings indicate that the sewage spill created a risk of harm across the entire proposed class

13

geography.  The fact that the warnings were later lifted does not preclude the possibility that harm occurred.  (*See* ECF No. 30, at 11).

Defendant's argument is also premature.  It is the "unusual case" in which a court can reject class allegations as a matter of law on the face of the complaint.  *Oliver v. Navy Fed. Credit Union*, 167 F.4th 106, 115 (4th Cir. 2026).  District courts generally consider the class "certification question when the record underlying the allegations in the amended complaint has been more fully developed."  *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 117 (4th Cir. 2013).  At this stage in the proceedings, the record is sparse.  Defendant will have another opportunity to contest the putative class's geographic scope at a later time, upon a more developed record.

### C.   Clean Water Act Reservation of Right

Plaintiffs' proposed SAC also includes a reservation of right to assert a CWA claim in the future should the ongoing federal enforcement action prove not to be diligently prosecuted.  Although Plaintiffs do not characterize the reservation of right as an amendment, given that a version of it appeared in the FAC, Defendant opposes its continued inclusion.  (*Compare* ECF No. 23-1, at 1–2 (Plaintiffs summarizing proposed amendments)*, with* ECF

No. 24, at 5–7 (Defendant seeking to preclude Plaintiffs' reservation of right)).  In the FAC, the reservation of right was predicated on a government enforcement action not being commenced within the statutory notice period, or such an enforcement action not being diligently prosecuted.  (ECF No. 22 ¶¶ 119, 121).  Now, reflecting the fact that the federal government has commenced an enforcement action within the statutory notice period, Plaintiffs' proposed amended reservation of right is predicated solely on a possible lack of diligent prosecution.  (ECF No. 23-3 ¶ 125).

Defendant contends that continuing to include the reservation of right is futile.  It argues that Plaintiffs cannot raise the CWA claim now, given the commencement of the government enforcement actions, or ever, because they waived the claim by dint of a Joint Stipulation and Order, (ECF Nos. 18; 19), when they did not assert the claim in the proposed SAC.  (ECF No. 24, at 5, 7).  Plaintiffs agree that they cannot raise the claim now, but dispute that they have waived the claim.  Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (collecting citations).  Although the Joint Stipulation and Order stated that Plaintiffs may add a CWA claim in the SAC if no government action had commenced, (ECF Nos. 18, at 2; 19 ¶ 2), it said nothing about Plaintiffs' purported right to

15

add a CWA claim if a commenced government action is not diligently prosecuted.  It is not true, then, that Plaintiffs knowingly relinquished their purported right to do so.  Whether, as a matter of law, they have such a right under the CWA is disputed, but that issue will not be ripe for resolution until Plaintiffs move to amend to add a CWA claim based on lack of diligent prosecution. Thus, the reservation of right does not stand in for an actual CWA claim such that it is subject to a futility analysis.

Still, the reservation of right was and is effectively meaningless.  Regardless of the reservation language, Plaintiffs would still need to move to add a CWA claim in the future if they believe they have the right to do so, and the court would decide at that time whether adding the claim is proper.  *Cf. Blue Acorn, LLC v. Dynamic Cath. Inst.*, No. 20-cv-1392, 2021 WL 12313075, at *5 (D.S.C. Apr. 22, 2021) (explaining that a complaint does not serve as a "placeholder for future causes of action").  Although Defendant does not move to strike the reservation, which would be the proper mechanism to eliminate it, the court may strike the reservation *sua sponte*.  Fed.R.Civ.P. 12(f)(1).  Plaintiffs even acknowledge that "[i]f the Court . . . regards the reservation language as surplusage," it "may be struck by [the] court under Federal Rule of Civil Procedure 12(f)."  (ECF No. 30, at 9).  Under

16

Rule 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[5] Finding the reservation of right to be immaterial and impertinent, the court will strike the following sentence in Paragraph 125 of the proposed SAC: "Plaintiffs reserve the right to commence an independent citizen suit action under the Clean Water Act should the governmental prosecution not constitute diligent prosecution within the meaning of that provision."  (ECF No. 23-3 ¶ 125).

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to file a second amended complaint will be granted and the language

---

[5]

Information is "immaterial" for the purposes of Rule 12(f) "if it has 'no essential or important relationship to the claim for relief or the defenses being pleaded.'"  *Meth v. Natus Med. Inc.*, 2014 WL 3544989, at *3 (E.D.Va. July 17, 2014) (quoting 5C Charles Alan Wright et al., Federal Practice & Procedure § 1382 (3$^\mathrm{d}$ ed.) (hereinafter, "Fed. Prac. & Proc.").  Similarly, information is "impertinent" for Rule 12(f) purposes if it does "not pertain, and [is] not necessary, to the issues in question."  Fed. Prac. & Proc. § 1382.

*Cummings v. GEO Grp., Inc.,* No. 23-cv-327, 2024 WL 250794, at *2 (E.D.Va. Jan. 23, 2024).

about the reservation of right will be stricken.  A separate order

will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge

18